UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MATTE SERVICES CORPORATION | * | CIVIL ACTION |
| versus | * | NO. 06-3020 |
| ONYX CONSULTING ENGINEERS, LLC and FOREST OIL CORPORATION | * | SECTION "F" |

ORDER AND REASONS

Forest Oil and Mariner Energy move for summary judgment. For the reasons that follow, the motion is GRANTED.

Background

Pursuant to a Construction Services Agreement ("Turnkey Contract") between Forest Oil and ONYX, ONYX agreed to design, fabricate, and install an oil and gas platform on a turnkey, lump sum basis for Main Pass Block 166 ("Block 166"), located in the Gulf of Mexico on the Outer Continental Shelf. ONYX subcontracted certain services to be performed under the Turnkey Contract to Matte Services and others.

Pursuant to the Master Service Agreement between ONYX and Matte Services, Matte agreed to construct and refurbish a tripod deck assembly to be installed on Block 166. Matte carried out its construction and refurbishment tasks at its land-based facility in Vermilion Parish, Louisiana. The MSA was later modified to add that Matte would load, secure, and position the deck upon a barge

to be delivered to Block 166 for$203,860. When the construction of the deck was completed, Matte loaded, positioned, and secured the deck to a barge located off the Louisiana coast so that it could be transported to and installed at Main Pass Block 166.

On May 11, 2006, Matte filed a Statement of Privilege Under the Louisiana Oil Well Lien Act, recorded in the public records of Plaquemines Parish, asserting a claim for the amount owed under the MSA ($403,894.06) plus attorneys' fees and encumbering property, including the production from the well on Block 166. In the Statement of Privilege, Matte alleges that it completed its obligations under the MSA and Turnkey Contract and that it has not been paid.

Eleven days later, Matte sued ONYX and Forest Oil in Louisiana state court, claiming that ONYX breached its subcontract by failing to pay the $403,894.06. Matte also seeks recognition of its lien and privilege pursuant to the Louisiana Oil Well Lien Act, La.R.S. 9:4861. On June 12, 2006, Forest Oil removed the lawsuit to this Court. Forest Oil filed its Answer and a cross-claim against ONYX for breach of contract and for indemnity. Not to be outdone, ONYX filed its Answer and a counter-claim against Matte and a cross-claim against Forest Oil.

Forest Oil and Mariner Energy Resources[1] now move for summary

[1] Forest Oil is the owner named in the lien and privilege; Mariner Energy Resources is now the owner of the affected property.

judgment, contending that Matte cannot invoke the state lien act for its wholly on-shore construction services that did not involve transportation or merely supplying materials.

I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d

646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.

At the outset, the Court notes that both parties (correctly) assume that Louisiana law applies to this dispute.[2]

The Louisiana Oil Well Lien Act ("LOWLA" or "the Act") creates a privilege in favor of certain persons who perform labor or service or furnish supplies in connection with any oil, gas, or water well. La.R.S. 9:4862(A) provides that:

> The following persons have a privilege over the property described in R.S. 9:4863 to secure the following obligations incurred in operations:
>
> (1) A contractor for the price of his contract for operations.
> (2) A contractor for the price of his

[2] "[W]hen disputes arise involving fixed structures erected on the outer Continental Shelf, applicable laws of the adjacent state will be applied to the extent not inconsistent with other federal laws and regulations." See Coulter v. Texaco, Inc., 117 F.3d 909, 911 (5th Cir. 1997) (citations omitted). Here, the dispute concerns the validity of Matte's lien rights against the Block 166 well site.

> contract for providing services or facilities to persons performing labor or services on a well site located in the waters of the state.
>
> ...
>
> (4) A person who performs trucking, towing, barging or other transportation services for an operator or contractor, for the price of transporting movables to the well site.
>
> ...
>
> (6) A seller for the price of a movable sold to an operator or contractor that is:
> (a) Incorporated in a well or in a facility located on the well site.
> (b) Consumed in operations.
> (c) Consumed at the well site by a person performing labor or services on a well site located in the waters of the state.

The privilege created by application of LOWLA secures the amount of the obligation, interest due on the amount of the obligation, the cost of preparing and filing the statement of privilege, and attorney's fees not to exceed ten percent. La.R.S. 9:4862(B).

A "contractor" is defined as

> a person, other than a lessee, who contracts with an operator to perform the operations giving rise to the claimant's privilege or who, by subcontract with a contractor of the operator or through a series of subcontracts emanating from such a contractor, contracts to perform all or part of the operations contracted for by the operator.

La.R.S. 9:4861(10).

"Operations" are "every activity conducted by or for a lessee **on a well site** for the purpose of...[d]rilling, completing, testing, producing, reworking, or abandoning a well." La.R.S.

9:4861(4)(a)(i) (emphasis added).

Forest Oil and Mariner Energy Resources contend that summary judgment is proper because Matte's work falls outside the scope of LOWLA. They argue that (1) Matte does not have a valid lien under LOWLA because the construction of the deck occurred solely onshore at Matte's facility in Vermillion Parish; and (2) Matte does not have a valid lien as a "seller of movables" pursuant to La.R.S. 9:4862. Matte responds that it is entitled to invoke LOWLA for several reasons: (1) its work is deemed to have been performed at the site because, under the Turnkey Contract, the work is not deemed complete until commissioning occurs at the site; (2) it provided extensive barging and transportation services to defendants pursuant to La.R.S. 9:4862(A)(4); and (3) it supplied movables to defendants, creating a privilege under La.R.S. 9:4862(6). Matte adds that material issues of law and fact preclude summary judgment. The Court disagrees.

The plain and clear language of LOWLA limits the scope of the privilege to persons who perform services on a well site, or perform certain transportation services, or qualify as a seller of movables.[3] The record discloses no genuine issue of material fact: Matte is not eligible to invoke the privilege on any of these grounds.

---

[3] The Act provides other bases for invoking the privilege but the parties agree that these are the only potential bases arguably applicable to Matte.

A. La.R.S. 9:4862(A)(1) and (2)

Matte concedes that it did not perform any work at the well site; rather its work was completed at its land-based facility. Its argument that its work should be "deemed" to have been performed at the well site because its work was not considered complete under the Turnkey Contract until the commissioning and acceptance of the structure at the Block 166 well site is unsupported. While the text of the Act clearly defines "contractor" to include subcontractors, such persons can only invoke the privilege if they have contracted to perform "operations." See La.R.S. 9:4861(10). And "operations" is clearly limited to activities conducted "on a well site." See La.R.S. 9:4861(4)(a)(i).

B. La.R.S. 9:4862(A)(4)

Likewise, a plain reading of the statute instructs that Matte cannot invoke the privilege as a "person who performs trucking, towing, barging or other transportation services for an operator or contractor for the price of transporting movables to the well site." La. R.S. 9:4862(A)(4). Matte seeks comfort in this provision, but it is undisputed that different ONYX subcontractor transported the deck, not Matte. After completing refurbishment of the deck, Matte merely loaded, positioned, and secured it to the barge. The deck was then transported by another subcontractor to Block 166 for installation. Matte does not dispute that another

company transported the deck; drawing attention to no authority, it merely asserts that its loading activities create an issue of fact regarding whether it can assert its lien pursuant to (A)(4). This argument finds no support in the certain meaning of "transportation services." There is no contested issue of fact precluding summary judgment: Matte loaded the deck but did not transport it.

C. La.R.S. 9:4862(A)(6)

Finally, Matte attempts to invoke the privilege granted to a “seller of a movable” under (A)(6). But Matte concedes that its work on the deck included only refurbishing, offloading, stacking, welding, fitting, cleaning, painting, and loading the deck. Matte's services, then, involved actual construction, not a sale of movables. See Wilson Insustries, Inc. v. Aviva America, Inc., 185 F.3d 492, 495 (5th Cir. 1999) (upholding district court's finding that company that sold tubulars to owner was merely a supplier and not a contractor); see also J. Ray McDermott, Inc. v. Berry Contracting, No. 03-2099, 2004 WL 224583, at *9 (E.D. La. Feb. 3, 2004) (determining that a subcontractor could not assert a privilege under La.R.S. 9:4862(A)(6) because its work fabricating, installing, procuring of bulk materials, and precommissioning was work involving the "construction or incorporation of items into the [platform], rather than merely supplying materials"). Matte would have this Court amend the terms of the Act. That is for a legislature, not a court.

Accordingly, because Matte is not entitled to the privilege provided by LOWLA, the motion for summary judgment is GRANTED.

New Orleans, Louisiana, April 10, 2007.

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE